IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert James Gadsen, ) | Civil Action No.:2:11-03190-JFA-BHH |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| John R. Owen, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The Petitioner, a federal prisoner proceeding pro se, has filed this habeas petition pursuant to 28 U.S.C. § 2241. This matter is before the Court on the Respondent's motion to dismiss or, alternatively, for summary judgment. (Dkt. No. 13.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner Robert James Gadsen ("Petitioner" or "Gadsen") filed this habeas action on or about November 17, 2011. (See Dkt. No. 1 at 11 of 11.) On February 10, 2012, the Respondent filed this motion to dismiss or, alternatively, for summary judgment. (Dkt. No. 13.) By order filed February 13, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 14.) Petitioner filed his Response in Opposition on or about March 12, 2012. (See Dkt. No. 16.) Respondent filed a Reply on March 26, 2012. (Dkt. No. 18.)

## PROCEDURAL HISTORY

The Petitioner is currently incarcerated at the Federal Correctional Institution in Salters, South Carolina ("FCI-Williamsburg") serving a 300-month sentence imposed by the United States District Court for the District of South Carolina for Interference with Commerce

by Threats or Violence (Robbery) (a violation of 18 U.S.C. § 1951) and Carrying a Firearm During and in Relation to a Crime of Violence (a violation of 18 U.S.C. § 924(c)). (Aff. of Hector Solis ¶ 3; see also Solis Aff. Ex. A.) According to Respondent, his anticipated release date, with good time, is January 18, 2021. (Solis Aff. ¶ 3; see also Solis Aff. Ex. B.)

On March 12, 1996, Petitioner was arrested by the North Charleston Police Department on ten charges: (1) Trespassing; (2) Possession of a Stolen Pistol; (3) Resisting Arrest with a Deadly Weapon; (4) Assault with a Deadly Weapon; (5) Possession of a Firearm by a Person Convicted of a Crime of Violence; (6) Possession of Cocaine; (7) Possession of Amphetamine; (8) Armed Robbery; (9) Possession of a Stolen Motor Vehicle; and (10) Assault with Intent to Kill. (Solis Aff. ¶ 5.) Petitioner remained in the primary custody of state officials after this arrest. (Id.)

On March 15, 1996, Petitioner was sentenced to thirty days imprisonment by the North Charleston Municipal Court for Trespassing. Petitioner completed serving this sentence on April 13, 1996. (See id. ¶ 25.)

On April 17, 1996, the South Carolina Department of Probation, Parole, and Pardon Services had Petitioner placed in custody for a Parole Revocation. (Id. ¶ 7.)[1] Petitioner was held on the Parole Revocation until his maximum out date of February 2, 1999. (Id.)

On October 10, 1996, Petitioner was indicted in the United States District Court for the District of South Carolina for Possession of a Firearm by a Convicted Felon. (Id. ¶ 8.) On March 12, 1997, a two-count indictment against Petitioner was filed in the United States District Court for the District of South Carolina; Petitioner was charged therein with Interference with Commerce By Threats or Violence (Robbery) and Carrying a Firearm During and in Relation to a Crime of Violence. (Id. ¶ 11.) The one-count indictment (filed October 10, 1996) was dismissed without prejudice on April 2, 1997. (Id. ¶ 12.)

---

[1] On February 16, 1995, Petitioner had been paroled from a twenty-year sentence imposed on April 13, 1987, for Attempted Armed Robbery and Armed Robbery. (Solis Aff. ¶ 7.)

2

On February 24, 1997, while he was being held on Parole Revocation, Petitioner pled guilty to a charge of Assault with Intent to Kill; he was sentenced to ten years of imprisonment with the South Carolina Department of Corrections. (Id. ¶ 10.) Although he completed the service of his Parole Revocation sentence on February 2, 1999, Petitioner remained in custody on the ten-year sentence. (Id. ¶ 15.) However, the State of South Carolina vacated this ten-year sentence on March 6, 2001. (Id. ¶ 16.) Petitioner was turned over to the United States Marshals Service on May 2, 2001, for service of his federal sentence. (Id.)

The Bureau of Prisons ("BOP") determined that the Petitioner's federal sentence commenced on May 2, 2001. (Id. ¶ 17.) The BOP credited Petitioner with a total of 825 days prior custody toward his federal sentence. (Id.) Petitioner was credited with these 825 days as follows:

(a) March 12, 1996 to March 14, 1996 (3 days),

(b) April 14, 1996 to April 16, 1996 (3 days), and

(c) February 3, 1999 to May 1, 2001 (819 days).

(Solis Aff. ¶¶ 24-26.) Credit was not given between March 15, 1996, and April 13, 1996, because Petitioner was serving the thirty-day sentence imposed by the North Charleston Municipal Court. (Id. ¶ 27.) Similarly, credit was not given between April 17, 1996, and February 2, 1999, because Petitioner was serving the state Parole Revocation sentence. (Id.) Finally, no credit was given after May 1, 2001, because Petitioner's federal sentence commenced on May 2, 2001. (Id. ¶ 28.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue'

exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

In his § 2241 petition, Ground One for habeas relief is "whether Petitioner is entitled to jail credits for time spent in state custody/county jail." (Dkt. No. 1 at 8 of 11.) In the "relief" section of his petition, he "prays that relief is granted by awarding him the jail credits for time he has been detained by federal and state authorities." (Id. at 9.) Petitioner complains in his memorandum in support of his § 2241 petition that he has been awarded "825 days credit out of 1457 days that he had been detained on since February of 1996." (Dkt. No. 1-1 at 4 of 9.) Petitioner states,

> Even without granting the 600 plus days requested a recalculation of the credit jail time would reveal that Gadsen is entitled to 90 more days than previously calculated from 3-14-1996 to 4-14-96 plus from 4-16-96 to 6-10-96.

(Dkt. No. 1-1 at 7 of 9.) Petitioner also complains that the federal detainer "stopped [him] from earning good time and work time while in max custody." (Id.) According to Petitioner, he has "not received his full compensation of jail credit as required from 3-12-1996 to 5-1-2001." (Id. at 9 of 9.)

Although not entirely clear from his petition, it appears Gadsen is arguing he should have the entire time period from March 12, 1996, through the commencement of his federal sentence applied as prior custody credit toward his federal sentence. (See generally Dkt. No. 1.) Respondent moved for summary judgment, and asked that the instant request for

4

a writ of habeas corpus be denied, because the BOP has properly awarded Petitioner's prior custody credit. (See Dkt. No. 13.)

When a court imposes a federal criminal sentence, the BOP is responsible for computing the inmate's term of imprisonment. See United States v. Wilson, 503 U.S. 329, 334-35 (1992) (recognizing that the United States Attorney General has delegated this authority to the BOP); see also 28 C.F.R. § 0.96. Calculation of a federal sentence is governed by 18 U.S.C. § 3585 and requires that the BOP (1) ascertain the date on which the federal sentence commences and (2) determine the extent to which the inmate may receive credit for time spent in custody prior to the commencement of the sentence.

In the instant case, there is no dispute over when Petitioner's federal sentence began; his federal sentence began on May 2, 2001. (Solis Aff. ¶ 17.) Resolution of this case depends on prior custody credit.

The calculation of credit for prior custody is governed by 18 U.S.C. § 3585(b), which provides as follows:

> **(b) Credit for prior custody**.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> > **(1)** as a result of the offense for which the sentence was imposed; or
> > **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). Permitting a prisoner to receive double credit for time served would violate 18 U.S.C. § 3585(b). See Wilson, 503 U.S. at 333 (noting that "the final clause of § 3585(b) allows a defendant to receive credit only for detention time 'that has not been credited against another sentence.'"); United States v. Kramer, 12 F.3d 130, 132 (8th Cir.1993) (explaining that "[t]he record shows that [the petitioner] received credit for that . . . period against his state sentence" and holding that the BOP "properly decided not to

5

award [the petitioner] credit for the time served, as it would have contravened the proscription in 18 U.S.C. § 3585(b) against double crediting"); United States v. Mojabi, 161 F.Supp.2d 33, 36 (D. Mass. 2001) (holding "[s]ection 3585(b) prohibits 'double-credit', i.e. awarding credit for presentence time served against one sentence if that time has already been credited against another sentence."); United States v. Arroyo, 324 F.Supp.2d 472, 474 (S.D.N.Y. 2004) (finding that the BOP "is precluded from granting credit for time in pre-sentence detention that has already been credited against another sentence"); Pilarte-Harrigan v. Owens, C.A. No. 3:10–885–HMH–JRM, 2011 WL 251469, at *6 (D.S.C. Jan. 26, 2011) ("Because Pilarte–Harrigan's detainment prior to the date on which his sentence commenced was credited toward his commonwealth sentence, the BOP properly denied Pilarte–Harrigan prior custody credit for that time.").

In the instant case, Petitioner received prior custody credit for all time after his arrest on March 12, 1996, until the commencement of his federal sentence, except (a) March 15, 1996, through April 13, 1996, when he was serving a thirty-day sentence imposed by the North Charleston Municipal Court, and (b) April 17, 1996, through February 2, 1999, when he was serving the state Parole Revocation sentence. (Solis Aff. ¶ 27.) Because Petitioner received credit for all time in custody except time that was credited toward state sentences, Respondent is entitled to summary judgment. Beard v. Bureau of Prisons, 133 F.3d 913, at *1 (4th Cir. 1998) (unpublished table decision) ("A defendant may not receive credit against his federal sentence for time spent in state custody prior to the date the federal sentence commences if that time has been credited against another sentence."); Johnson v. Deboo, No. 5:08CV184, 2009 WL 3583695, at *8 (N.D.W. Va. Oct. 26, 2009) ("In the instant case, petitioner received credit against his state sentences for the time he was in custody prior to sentencing. Because the petitioner has already been granted credit for this time period by the state, the petitioner is not entitled to also have this time credited against

6

his federal sentence as well. Thus, petitioner is not entitled to any prior custody credit."); cf. United States v. Goulden, 54 F.3d 774, at *2 n.3 (4th Cir. 1995) (unpublished table decision) (noting that credit pursuant to 18 U.S.C. § 3585(b) "is only available for time spent in custody which has not been credited against another sentence").

As Respondent notes in his Reply, "[i]t appears in the Petitioner's Response that he has conceded he is not entitled to any additional prior custody credit under 18 U.S.C. § 3585(b) . . . ." (Dkt. No. 18 at 2.) In his Response in Opposition, Petitioner states that he "wish[es] only to be given credit for the good time work credited that he was denied by being in closed state custody as a direct consequence[] of his federal conviction." (Dkt. No. 16 at 6 of 9.) Although his argument is less than clear, it appears Petitioner is contending that because he was placed in "closed custody confinement" for the ten-year state sentence that was ultimately overturned, he was not able to work and earn "good time work credit towards the sentence." (Dkt. No. 16 at 7 of 9.) Petitioner states (verbatim),

> Petitioner request the reinstatement of the Good Time Work Credit term be calculated towards his federal credit good. [T]hrough petitioner has been granted State Custody Credit and federal good time towards his federal sentence. This calculation is unequal to what he would have received if he was awarded the Good Time Work Credit he could have earned in the South Carolina Doc. for early release on his parole term of imprisonment.

(Id. at 8 of 9.)

In Brown v. Bledsoe, 405 Fed. App'x 575 (3d Cir. 2011), the Third Circuit rejected a similar claim in an unpublished opinion. The petitioner in Brown claimed, *inter alia*, that he was "deprived of [his] rights to earn good time credits" while in the SMU. Brown, 405 Fed. App'x at 576 n.1. The Third Circuit stated,

> While a § 2241 petition may be used to challenge a disciplinary proceeding that resulted in the loss of good conduct time, Brown has alleged only that he will not be able to "earn any good time credits at all while at the [SMU]." We read this claim as a challenge to the denial of the opportunity to earn good

7

> time credits, rather than as a challenge to the loss of good time credits actually awarded. Accordingly, the claim is not cognizable in a § 2241 petition.

Id. (citations omitted).

In the case *sub judice*, Gadsen does not claim that he lost good time that he accrued; rather, he appears to complain that he was unable to earn such credit–due to his classification status–while he was serving the ten-year state sentence that was later overturned. To the extent such a claim is cognizable in the instant § 2241 petition, it must be rejected. Gadsen's inability to earn credits does not implicate a liberty interest that arises directly under the Constitution. See Meachum v. Fano, 427 U.S. 215, 225-26 (1976); Wolff v. McDonnell, 418 U.S. 539, 557 (1974). In addition, South Carolina prison regulations regarding classification create no liberty interests protected by the Fourteenth Amendment. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994); see also Brown v. Evatt, 322 S.C. 189, 195, 470 S.E.2d 848, 851 (1996); Sandin v. Connor, 515 U.S. 472, 486 (1995) (concluding that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Accordingly, the undersigned recommends granting summary judgment to Respondent. See Henderson v. Johnson, No. 7:06CV00638, 2007 WL 712419, at *2 n.2 (W.D. Va. Mar. 6, 2007) ("In any event, the court notes that, contrary to Henderson's assertions, inmates have no protected liberty interest in maintaining a particular custody level or earning a specific rate of good conduct time. See DeBlasio v. Johnson, 128 F.Supp.2d 315, 329 (E.D.Va.2000), aff'd, 13 Fed. Appx. 96 (4th Cir.2001). Thus, even if Henderson's disciplinary convictions ultimately impact his custody status or the rate at which he earns good time in the future, such changes do not implicate federal due process protections. Id. The court also notes that adequate state law remedies, including the Virginia Tort Claims Act, are available to

Henderson as a means of challenging any loss of funds." (citations omitted)); see also Delaney v. Ozmint, 4:05-1968-HFF-TER, 2006 WL 1878982, at *8 (D.S.C. July 5, 2006).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. No. 13) be GRANTED and the Petitioner's habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

July 2, 2012<br>
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).